IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Edward Lang, | Case No. 5:12 CV 2923 |
| Petitioner, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| David Bobby, Warden, | |
| Respondent. | |

## INTRODUCTION

Several Motions are pending before this Court: Petitioner Edward Lang's Motion to Conduct Discovery, Motion for Evidentiary Hearing, and Motion to Supplement the Record (Docs. 36–38). Respondent Warden David Bobby responded (Docs. 39–41), and Lang replied (Docs. 43–44). For the following reasons, this Court denies Lang's Motions for Evidentiary Hearing (Doc. 38) and for Discovery (Doc. 37), and grants Lang's Motion to Supplement the Record (Doc. 36).

## CASE HISTORY

In December 2006, a Stark County Grand Jury indicted Lang for the aggravated murders of Jaron Burditte and Marnell Cheek. Specifically, Lang was charged with two counts of aggravated murder in violation of R.C. § 2903.01(B). Each aggravated murder count carried two capital specifications: the murders were part of a course of conduct involving the purposeful killing of, or attempt to kill, two or more persons in violation of R.C. § 2929.04(A)(5); and the murders were committed while Lang was committing or attempting to commit aggravated robbery in violation of

R.C. § 2929.04(A)(7). Lang also was indicted for aggravated robbery in violation of R.C. § 2913.01. All counts included a firearm specification (Doc. 17-1 at 47–52).

A jury found Lang guilty of all charges and specifications in July 2007 and, following a mitigation hearing, the jury also rendered verdicts of death for the aggravated murder of Cheek and life in prison without eligibility for parole for the aggravated murder of Burditte. The trial court adopted the jury's recommendations, and also sentenced Lang to a ten-year term of imprisonment for the aggravated-robbery count, and merged the gun specifications with an additional three-year term of imprisonment (Doc. 17-5 at 1362–73).

Lang's convictions and sentence were affirmed on direct appeal and during state post-conviction proceedings. Lang filed a timely direct appeal to the Ohio Supreme Court, raising twenty-one claims for relief (Doc. 18-1 at 1519–20). In August 2011, the court affirmed Lang's convictions and sentence, but remanded his case to the trial court to impose the appropriate term of post-release control pursuant to R.C. § 2929.191. *State v. Lang*, 129 Ohio St. 3d 512 (2011). Lang then filed a motion for reconsideration, which the court denied in November 2011 (Doc. 18-3 at 2107–16). Lang next filed an application to reopen his direct appeal in January 2012, asserting five claims (Doc. 18-3 at 2144–57). The court denied the application in September 2012 (Doc. 18-4 at 2158).

In May 2008, Lang filed a petition for post-conviction relief in the trial court, presenting fourteen grounds for relief (Doc. 18-4 at 2200–48). He requested discovery and an evidentiary hearing on all grounds (*id*. at 2247). He also filed amendments to two of his post-conviction claims with additional exhibits (Doc. 19-3 at 2647–65), and moved for funds for a neurological examination. In June 2009, the trial court granted the State's motion to dismiss Lang's petitions (Doc. 19-5 at 2873–2903). Lang appealed this decision, and the Ohio court of appeals affirmed (Doc. 20-1 at

3071–89). Lang appealed to the Ohio Supreme Court, which in March 2012 declined to accept jurisdiction to hear the appeal (Doc. 20-2 at 2149).

Lang next turned to the federal court. He filed his Notice of Intent to initiate this habeas action in November 2012 and his Petition for Writ of Habeas Corpus followed in September 2013. He asserts seventeen grounds for relief (Doc. 16). Respondent filed a Return of Writ in November 2013 (Doc. 23). Lang filed his Traverse in April 2014 (Doc. 33). The pending Motions followed. Specifically, Lang asks to supplement the record with certain sealed portions of the state-court record (Doc. 36 at 1). He also seeks discovery on certain grounds for relief, and requests an evidentiary hearing regarding his post-conviction claims and his procedural default arguments (Doc. 38 at 4–6).

## DISCUSSION

Lang's Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. A federal habeas petitioner "is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Discovery in habeas cases is governed by Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts. It provides:

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

"Good cause" for discovery under Rule 6(a) exists "only where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . . ." *Bracy*, 520 U.S. at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). The burden is on the petitioner to demonstrate the materiality of the information requested. *See Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004). Habeas Rule 6(a) does not

3

"sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams*, 380 F.3d at 974 (internal quotation marks and citations omitted). The petitioner "must set forth specific allegations of fact." *Id.*

A federal habeas petitioner's request for an evidentiary hearing is governed by 28 U.S.C. § 2254(e)(2). Lang must show (1) his claim relies on "a factual predicate that could not have been previously discovered through the exercise of due diligence"; and (2) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Id.*

Restrictions on discovery and evidentiary hearings in federal habeas cases have been examined by the U.S. Supreme Court in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). The Court explained that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 1398. The Supreme Court further clarified the meaning of "on the merits" in *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770 (2011). It explained, "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784–85. Review under Section 2254(d)(2), as its plain language indicates, is limited to "the evidence presented in the State court proceeding." Noting that "review under § 2254(d)(1) focuses on what a state court knew and did," the *Pinholster* court reasoned that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Pinholster*, 131 S. Ct. at 1399. "[F]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient efforts to pursue in state proceedings." *Id.* at 1401.

4

Thus, it is clear that under *Pinholster*, "district courts are precluded from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue." *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013). And the Sixth Circuit repeatedly has affirmed the denial of federal evidentiary hearings on habeas claims that have been adjudicated on the merits in state court. *See, e.g., Bourne v. Curtin*, 666 F.3d 411, 415 (6th Cir. 2012) (finding petitioner was not entitled to an evidentiary hearing because the state courts had adjudicated his claim on the merits and, under *Pinholster*, petitioner was "stuck with 'the record that was before the state court'"); and *Sheppard v. Bagley*, 657 F.3d 338, 344 (6th Cir. 2011) (refusing to consider evidence not in state-court record in light of *Pinholster*).

Although *Pinholster* did not directly address the issue of discovery -- it concerned only whether a federal habeas court may consider new evidence introduced through an evidentiary hearing in its review under Section 2254(d)(1) -- the Sixth Circuit has indicated, as have other district courts in this Circuit, that *Pinholster* also applies to evidence gathered through discovery or sought in motions for discovery in federal habeas cases. *See, e.g., Loza v. Mitchell*, 2014 WL 4403111, at *22–23 (6th Cir. 2014) (holding *Pinholster's* restriction applies to evidence acquired by petitioner through discovery permitted by district court before *Pinholster* was decided); *Caudill v. Conover*, 871 F. Supp. 2d 639, 646 (E.D. Ky. 2012) ("It would defy logic to preclude a petitioner from developing factual information in an evidentiary hearing [under *Pinholster*], but allow her to introduce the same factual information via discovery and expansion of the record."); *Blevins v. Warden, Ross Corr. Inst.*, 2011 WL 6141062, at *4 (S.D. Ohio 2011) ("*Pinholster* is not irrelevant to discovery in federal habeas. . . . [t]here cannot be good cause to collect evidence which cannot be presented.").

5

Nevertheless, *Pinholster* did not completely bar federal habeas courts from considering new evidence. *Pinholster*'s restrictions do not apply to claims that were not adjudicated on the merits by the state courts. *Pinholster*, 131 S. Ct. at 1401; *see also Cunningham v. Hudson*, 756 F.3d 477, 487 n.4 (6th Cir. 2014). A federal habeas court also may consider new evidence when deciding whether there is cause and prejudice or actual innocence to excuse a defaulted claim. *House v. Bell*, 547 U.S. 518, 537–38 (2006).

Thus, *Pinholster* does not bar consideration of evidence introduced for the first time in federal habeas when a federal court already has determined that the state court's adjudication involved an unreasonable federal-law error in violation of Section 2254(d). As Justice Breyer explained in *Pinholster*:

> An offender who believes he is entitled to habeas relief must first present a claim (including his evidence) to the state courts. If the state courts reject the claim, then a federal habeas court may review that rejection on the basis of the materials considered by the state court. If the federal habeas court finds that the state-court decision fails (d)'s test (or if (d) does not apply), then an (e) hearing may be needed.
>
> For example, if the state-court rejection assumed the habeas petitioner's facts (deciding that, even if those facts were true, federal law was not violated), then (after finding the state court wrong on a (d) ground), an (e) hearing might be needed to determine whether the facts alleged were indeed true. Or, if the state-court rejection rested on a state ground, which a federal habeas court found inadequate, then an (e) hearing might be needed to consider the petitioner's (now unblocked) substantive federal claim. Or if the state-court rejection rested on only one of several related federal grounds (e.g. that counsel's assistance was not "inadequate"), then, if the federal court found that the state court's decision in respect to the ground it decided violated (d), an (e) hearing might be needed to consider other related parts of the whole constitutional claim (e.g. whether the counsel's "inadequate" assistance was also prejudicial). There may be other situations in which an (e) hearing is needed as well.

*Pinholster*, 131 S. Ct. at 1412 (Breyer, J., concurring in part, dissenting in part).

6

Recently, the Sixth Circuit ruled that *Pinholster* would not foreclose an evidentiary hearing in a habeas case where the state court's determination of petitioner's *Batson* claim violated Section 2254(d)(1). *Harris v. Haeberlin*, 752 F.3d 1054, 1057–58 (6th Cir. 2014). It therefore remanded the case to the district court for a second *Batson* hearing so the district court could reassess the claim. *See also Lynch v. Hudson*, 2011 WL 4537890, at *5 (S.D. Ohio 2011) (if petitioner was able to demonstrate, based on the state court record alone, that Section 2254(d)(1) was satisfied, "the Court allows for the possibility that it could then consider [the new evidence] in making the determination whether to grant habeas relief"); *Williams v. Mitchell*, 2011 WL 5118469, at * 2 (N.D. Ohio 2011) (denying evidentiary hearing, but noting on motion for reconsideration that "[t]his Court agrees with Petitioner that *Pinholster* does not prevent habeas courts from considering evidence presented at an evidentiary hearing once it has determined that the petitioner's claim satisfies AEDPA's Section 2254(d)").

The issue, then, becomes whether discovery and/or evidentiary hearings are permissible *before* a district court determines whether Section 2254(d)(1) or (d)(2) have been satisfied, as Lang requests here. The Supreme Court noted in *Pinholster* that there was "no need [to] decide whether § 2254(e)(2) prohibited the District Court from holding an evidentiary hearing or whether a district court may ever choose to hold an evidentiary hearing before it determines that § 2254(d)(1) has been satisfied." *Pinholster*, 131 S. Ct. at 1411 n.20. *See also Monroe v. Warden*, 2012 WL 4342890, at *10 (S.D. Ohio 2012) ("While *Pinholster* does not permit this Court to consider extra-record evidence in deciding the § 2254(d)(1) question, it does not dictate the order in which that question must be considered in a habeas case and . . . does not discuss habeas discovery at all."); *Pike v. Johnson*, 2013

7

WL 247718, at *3 (E.D. Tenn. 2013) ("While *Cullen v. Pinholster* limits the scope of review under § 2254(d)(1), it says nothing about the court's discretion to allow discovery.").

The Sixth Circuit has not directly addressed this issue. Some district courts in this Circuit have allowed factual development in habeas cases before a Section 2254(d)(1) determination. *See, e.g., Conway v. Houk*, 2011 WL 2119373, at *3 (S.D. Ohio 2011) ("*Pinholster* did not . . . speak to the standards governing discovery set forth in Rule 6", and "[t]hat is reason enough to refrain from invoking *Pinholster's* restrictions at the discovery phase."). Other district courts, however, have found motions for discovery and evidentiary hearings to be premature until the court has further reviewed the claims at issue or the full petition, and have denied them without prejudice. *See, e.g., Caudill*, 871 F. Supp. 2d at 649 ("Because any new evidence might never even be considered by the Court, it seems advisable to delay ruling on the motions [for discovery, evidentiary hearing, and appointment of an expert witness] until the petition is reviewed on the merits."); *Moritz v. Woods*, 2014 WL 2115500, at *1 (E.D. Mich. 2014) ("Until this Court reviews these [supplemental] pleadings, particularly respondent's answer, 'it is impossible to evaluate what, if any, discovery is needed and whether the discovery is relevant and appropriately narrow.'") (citation omitted); *Williams v. Houk*, 2012 WL 6607008, at **5-6 (N.D. Ohio 2012) (denying discovery motion "subject to resurrection").

Here, Lang concedes that he presented his First through Fourth, Eighth, and Sixteenth Claims to state courts.[1] But, he argues that the claims were not "adjudicated on the merits," and *Pinholster*

---

[1] Lang acknowledges that he presented his First, Second, Third, Eighth, and Fourteenth Claims to the Ohio Supreme Court on direct appeal, and the court ruled on their merits (Doc. 33 at 12, 45, 59, 74, 98, 119). He presented his Fourth Claim to the Ohio Supreme Court on an application for reopening, which was denied on its merits (*id*. at 74). And he asserted the First and Fourteenth Claims to the trial court again during post-conviction proceedings, and the court denied the claims on their merits (Doc. 19-5 at 2875–03).

8

therefore does not apply to them. Lang points to *Pinholster*'s statement, "If a fully developed claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the state court" (Doc. 37 at 6, quoting *Pinholster*, 131 S. Ct. at 1400; *see also* Doc. 38 at 8). He argues that, unlike in *Pinholster*, his claims were not "fully developed," because, despite his diligent efforts, the State did not provide him a full and fair opportunity to develop the facts of his claims in post-conviction and application-to-reopen proceedings (Doc. 37 at 6–7; Doc. 38 at 8–9; Doc. 43 at 4–6).

Lang cites for support, among other cases, *Wellons v. Hall*, 558 U.S. 220 (2010), and *Panetti v. Quarterman*, 551 U.S. 930 (2007) (Doc. 37 at 5–6; Doc. 38 at 13). In *Wellons*, the Supreme Court stated that "it would be bizarre if a federal court had to defer to state-court factual findings, made without any evidentiary record, in order to decide whether it could create an evidentiary record to decide whether the factual findings were erroneous." *Wellons v. Hall*, 558 U.S. at 223 n.3. *Wellons* is easily distinguished. Unlike the complete absence of a record in that case, Lang was able to submit 395 pages of affidavits and other evidence with his post-conviction petition. Lang's reliance on *Panetti* is similarly misplaced. In *Panetti*, the Court held that a state court unreasonably applied clearly established federal law when it failed to adhere to the procedural requirements for death penalty competency established in *Ford v. Wainwright*, 477 U.S. 399 (1986). *Panetti*, 551 U.S. at 948-52. Lang does not identify any specific procedures mandated by Supreme Court precedent that the state courts did not follow in his case.

Indeed, the Sixth Circuit has rejected similar arguments, i.e., that a state-court decision was not adjudicated on the merits because petitioner was not given a full and fair evidentiary hearing despite petitioner's diligence in seeking one, and was therefore outside the scope of *Pinholster*. In *Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013), the court stated, "While allowing a

9

petitioner to supplement an otherwise sparse trial court record may be appealing, especially where he diligently sought to do so in state court, the plain language of *Pinholster* and *Harrington* precludes it." The court noted that the First Circuit also rejected this argument in *Atkins v. Clarke*, 642 F.3d 47, 49 (1st Cir. 2011). In addition, in *Fears v. Bagley*, 462 F. App'x 565, 574 (6th Cir. 2012), the court acknowledged that under *Panetti*, "a defect in process may allow for de novo consideration of a claim brought before the state court on collateral review," but found that petitioner had asserted no clearly established federal law establishing that a state court's failure to allow the introduction of evidence in post-conviction proceedings was defective. The court concluded that *Pinholster* precluded it from considering evidence that was not before the state court. *See also Loza v. Mitchell,* 2014 WL 4403111, at *23 (6th Cir. 2014) (finding Ohio court of appeals did not violate petitioner's due process rights under *Panetti* by denying him an evidentiary hearing, and stating *Panetti* "does not provide a reason for refusing to accord AEDPA defense" and applying *Pinholster*); *Brenson v. Warden, Toledo Corr. Inst.*, 2014 WL 1818237 (S.D. Ohio 2014) (*Wellons* does not support discovery request); *Caudill*, 871 F. Supp. 2d at 646–47 (same); *Waddy v. Robinson*, 2014 WL 4674291, at *3 (S.D. Ohio 2014) (*Wellons* supports discovery only in cases where a petitioner can present truly bizarre facts and speculation about what caused those facts to occur, and nothing in *Pinholster* "suggests that a habeas petitioner who has been denied discovery in the state courts is empowered to use federal habeas discovery to correct that denial"); *Bowling v. Haeberlin*, 2012 WL 4498647, at *88 (E.D. Ky. 2012) (*Wellons* found inapplicable, and applied *Pinholster* where petitioner "cites no Supreme Court decisions supporting his assertion that his state post-conviction proceedings were constitutionally defective").

Lang further argues this Court should grant his discovery request because "[c]ourts have encouraged a liberal use of discovery mechanisms as a means of ensuring greater reliability in capital

10

proceedings" (Doc. 37 at 8). The Supreme Court has never adopted special discovery standards for capital habeas cases, however, and this argument also fails.

Accordingly, this Court finds that Lang's First through Fourth, Eighth, and Fourteenth Claims were adjudicated on the merits within the meaning of *Pinholster* and *Harrington*. Lang's requests for discovery and an evidentiary hearing regarding those claims, therefore, are denied without prejudice. If this Court later decides, based solely on the state-court record, that the state-court decisions at issue contravene or unreasonably apply clearly established Supreme Court precedent under Section 2254(d)(1), or involve an unreasonable determination of the facts under Section 2254(d)(2), it may then consider additional evidence to determine whether federal habeas relief should be granted. This Court has not yet made this threshold determination, however, and it is not inclined to do so in the context of deciding these Motions.

With regard to Lang's requests for discovery relating to his Seventh and Sixteenth Claims, which he did not raise in state court, and related procedural issues, this Court finds that Lang has not met his burden of demonstrating good cause under *Bracy*. In his Seventh Claim, Lang argues that the State suppressed exculpatory evidence and improperly destroyed potentially exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).[2] Specifically, he contends that the police did not fully investigate Lang's accomplice, Antonio Walker, so they *possibly* failed to preserve key evidence that *may* have shown that Walker was the principal offender (Doc. 16 at 65–66). Lang requests all files relating to Walker from the prosecutor, sheriff, and police departments, as well as information

---

[2] Lang claims that he raised this claim on direct appeal to the Ohio Supreme Court, but also acknowledges that the claim was "not adjudicated on the merits" (Doc. 33 at 96–98). The claim in state court to which he refers, however, concerned the sufficiency of the evidence to convict him as the principal offender of the murders. *See Lang*, 129 Ohio St. 3d at 542–43. Although Lang's sufficiency-of-the-evidence claim is related to his *Brady* claim in that they both concern Walker, they are different claims based on distinct legal theories.

11

the prosecutor has concerning Walker's plea agreement (Doc. 37 at 22). This claim is highly speculative, and the only factual basis Lang provides for his request is his conclusory allegation that there is a "strong indication that the State did not comply with its *Brady* obligations . . . ." (*id.*). This is precisely the type of fishing expedition prohibited under Habeas Rule 6. Moreover, Lang does not address the issue of why discovery is appropriate for a potentially unexhausted and procedurally defaulted claim.

In Lang's Sixteenth Claim, he asserts that the trial court failed to ensure that African-Americans were properly represented on his panel of prospective jurors (Doc. 16 at 97–99). Lang requests information from Stark County officials and agencies related to the racial composition of its juries and its jury selection system (Doc. 37 at 23–24). Aside from his allegation that the jury at his trial was composed of only white jurors, Lang does not provide any specifics to show that African-Americans were improperly excluded from his jury venire or that Stark County systematically excludes African-Americans from serving on juries. And Lang again fails to address the issue of why discovery is appropriate for a potentially defaulted claim.

Lang also seeks to conduct depositions of his trial and post-conviction attorneys to discover information that would support his cause and prejudice arguments in response to Respondent's assertion of procedural default (Doc. 37 at 25–26). Again, Lang does not offer specifics to show that he "may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . . ." *Bracy*, 520 U.S. at 908–09. These requests for discovery related to his Seventh and Sixteenth Claims and the procedural issues are denied with prejudice.

Finally, this Court grants Lang's Motion to Supplement the Record with missing portions of the state-court record that relate to his Seventh and Eighth Claims (Doc. 36). Respondent does not

12

oppose this request (Doc. 39). Documents that previously were filed in state courts under seal shall also be filed in this Court under seal.

## CONCLUSION

For the foregoing reasons, this Court denies Lang's Motion for Evidentiary Hearing (Doc. 38); denies Motion for Discovery as to his First through Fourth, Eighth, and Fourteenth Claims (Doc. 37) without prejudice; denies Motion for Discovery as to his Seventh and Sixteenth Claims and the procedural issues (Doc. 37) with prejudice; grants Lang's Motion to Supplement the Record (Doc. 36); and further orders that Respondent shall have thirty (30) days to supplement the record with documents previously under seal which shall remain under seal in this Court.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

October 23, 2014